UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| THERESA MARIE ANDERSON, | ) | No. EDCV 06-1228 FFM |
| Plaintiff, | ) | MEMORANDUM DECISION AND |
| | ) | ORDER |
| v. | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

On November 17, 2006, plaintiff Theresa Marie Anderson brought this action seeking to overturn the decision of the Commissioner of the Social Security Administration[1] denying her application for Supplemental Security Income benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.  Pursuant to the case management order entered on November 21, 2006, on August 6, 2007, the parties filed a Joint Stipulation (the "JS") detailing each party's arguments and authorities.  The Court has reviewed the administrative record (the "AR"), filed by defendant on May 22, 2007, and the Joint Stipulation.  For the reasons stated below, the Commissioner's decision is reversed and remanded for further proceedings.

---

[1]     Michael J. Astrue became Commissioner of the Social Security Administration on February 12, 2007 and is hereby substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

**PROCEDURAL HISTORY**

On November 6, 2003, Theresa Marie Anderson filed an application for Supplemental Security Income benefits.  Plaintiff alleged a disability onset of July 1, 1998.  The application was denied initially and upon reconsideration.  Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ").  ALJ Joseph Schloss held a hearing on April 6, 2005.  Plaintiff appeared with counsel and testified at the hearing.  On June 10, 2005, the ALJ issued a decision denying benefits.  Plaintiff sought review of this decision before the Appeals Council, which denied the request for review on June 28, 2006.

Plaintiff commenced the instant action on November 17, 2006.

**CONTENTIONS**

Plaintiff raises three issues in this action:

1.     Whether the ALJ properly considered the psychiatric examination performed by Dr. Susanna Khachatryan.

2.     Whether the ALJ posed a complete hypothetical to the vocational expert.

3.     Whether the ALJ properly considered the lay witness's observations of plaintiff.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402

U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  *Green v. Heckler*, 803 F.2d 528, 929-30 (9th Cir. 1986).  Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

A.      Issue One.

On June 30, 2001, Susanna Khachatryan, M.D., conducted a comprehensive psychiatric evaluation of plaintiff.  Dr. Khachatryan diagnosed plaintiff with mood disorder, not otherwise specified; a seizure disorder; and peptic ulcer disease.  She also found that plaintiff had social, functional, and occupational problems and gave plaintiff a Global Assessment of Functioning ("GAF") score of 54.[2]  (AR 234.)  A GAF score of 54 indicates that the patient has "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV-TR at 34.  Furthermore, Dr. Khachatryan opined that plaintiff might have some limitations in performing complex tasks secondary to her mood swings, paranoia, irritability, and decreased concentration.  (AR 235.)  Dr. Khachatryan also opined that plaintiff might have some limitations in accepting instructions from supervisors and interacting with co-workers and the public secondary to her mood swings and irritability.  (*Id.*)

---

[2]      The GAF score reflects the psychiatrist or psychologist's judgment of the patient's overall functioning.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text rev., 2000) (the "DSM IV-TR").

Plaintiff argues that Dr. Khachatryan's findings indicate that plaintiff suffers from a significant mental impairment and certain functional limitations.  Plaintiff contends that the ALJ erred in failing to provide specific and legitimate reasons for rejecting Dr. Khachatryan's opinion.  (JS 3-4.)  The Court agrees.

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *limited on other grounds*, *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996); *see also* 20 C.F.R. §§ 404.1502, 416.927(d).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also* 20 C.F.R. § 416.927(d)(2).  The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician.  *Lester*, 81 F.3d at 830; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for "specific, legitimate reasons" that are supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830-31.

Defendant contends that Dr. Khachatryan opined only that plaintiff "might" have some limitations in performing complex tasks, accepting instructions from supervisors, and interacting with co-workers and the public.  (JS 4.)  Defendant contends, in essence, that this finding was too inconclusive to merit consideration by the ALJ.  (JS 4.)  The Court disagrees.  As the Court reads Dr. Khachatryan's opinion, in using the term "might," Dr. Khachatryan did not indicate that plaintiff's limitations were doubtful or questionable, but rather that they depended on her mood swings,

1   paranoia, irritability, and decreased concentration.  In any case, a doctor's opinion may

2   still be probative even where it couches a limitation in conditional terms.  Here, the

3   ALJ may have believed Dr. Khachatryan's opinion to be against the weight of the

4   evidence, but the Court finds that he was still required to set forth specific and

5   legitimate reasons, supported by substantial evidence in the record, for rejecting it.  *See*

6   *Lester*, 81 F.3d at 830-31; *see also Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.

7   1984) (although ALJ need not discuss every item of evidence, he must explain why

8   significant and probative evidence has been rejected).

9          Defendant further contends that even if Dr. Khachatryan's opinion were

10   considered conclusive, the state agency physician, Gina M. Rivera-Miya, M.D.,

11   identified more restrictive functional limitations than those found in Dr. Khachatryan's

12   report.  Defendant argues that because the ALJ considered Dr. Rivera-Miya's findings

13   and apparently incorporated them into his determination of plaintiff's limitations, any

14   error in the ALJ's failure to consider Dr. Khachatryan's opinion was harmless.  (JS 4-

15   5, citing AR 21, 238-40, 553.)  The Court disagrees.  The limitations Dr. Rivera-Miya

16   found were *not* uniformly more restrictive than those found by Dr. Khachatryan.  In

17   pertinent part, Dr. Khachatryan found that plaintiff might have limitations in accepting

18   instructions from supervisors and interacting with co-workers, secondary to her mood

19   swings and irritability.  (AR 235.)  Dr. Rivera-Miya, by contrast, found that plaintiff

20   was "not significantly limited" in accepting instructions from supervisors and getting

21   along with coworkers.  (AR 239, 240.)

22          As a limitation on accepting instructions from supervisors and interacting with

23   co-workers would be significant and probative as to a claimant's ability to function in

24   the workplace, the Court cannot conclude that it was harmless error for the ALJ to

25   consider Dr. Rivera-Miya's opinion but ignore Dr. Khachatryan's.  *See Vincent*, 739

26   F.2d at 1395.  Remand is accordingly required for reconsideration of Dr.

27   Khachatryan's opinion.  If the ALJ decides to reject Dr. Khachatryan's opinion in

28   / / /

favor of Dr. Rivera-Miya's opinion, he must provide specific, legitimate reasons, supported by substantial evidence in the record, for so doing. *See Lester*, 81 F.3d at 830-31.

B.    Issue Two.

     1.    Dr. Khachatryan's limitations.

     During the hearing, the ALJ asked the vocational expert, Abbe May, the following hypothetical question:

> Q:    Okay.  I want you to assume a 42-, 43-year-old
>        individual that has an eighth-grade education, that's
>        done the same jobs that Ms. Anderson has done, who
>        has no physical limitations.  But on an MFRC form –
>        do you still have one there?
>
> A:    I do.
>
> Q:    On the MFRC form she would be rated as moderate in
>        Items 3, 5, and 12.[3]  All others on that form are
>        deemed not significantly limited.  This person can
>        sustain simple repetitive tasks with adequate pace and
>        persistence, and can adapt and relate to both coworkers
>        and supervisors, but should not work with the general
>        public.  Following those guidelines in the hypothetical
>        could that person do any of the past relevant work that
>        Ms. Anderson has done?

---

    [3]    The ALJ was apparently referring to Dr. Rivera-Miya's Mental Residual Functional Capacity Assessment form, which stated that plaintiff was "moderately limited" with respect to items 3 ("The ability to understand and remember detailed instructions"), 5 ("The ability to carry out detailed instructions"), and 12 ("The ability to interact appropriately with the general public").  (*See* AR 238-39.)

1        A:     Yes, Your Honor.  She could do the assembly work

2                and the home health aide.  And depending on the day

3                labor type work, some of that might apply as well.

4 (AR 553.)  Plaintiff contends that the ALJ erred in failing to incorporate Dr.

5 Khachatryan's opinion, which indicated that plaintiff might have some limitations in

6 accepting instructions from supervisors and interacting with co-workers, secondary to

7 her mood swings and irritability.  (JS 6-7.)

8       Plaintiff is correct in asserting that an ALJ is required to accurately set out the

9 plaintiff's limitations in his hypothetical to the vocational expert. *Andrews v. Shalala*,

10 53 F.3d 1035, 1043-44 (9th Cir. 1995) (remand upheld where hypothetical left out

11 categories of plaintiff's limitations); *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 886

12 (9th Cir. 2006).  However, no error occurs where the ALJ's hypothetical to the

13 vocational expert omits limitations claimed but not proven.  *Rollins v. Massanari*, 261

14 F.3d 853, 857 (9th Cir. 2001); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65

15 (9th Cir. 2001).  The Court has determined that the matter must be remanded for

16 reconsideration of Dr. Khachatryan's opinion.  Accordingly, if the ALJ does not reject

17 Dr. Khachatryan's opinion, the ALJ must include the limitations found by Dr.

18 Khachatryan in a renewed hypothetical to the vocational expert.  If the ALJ rejects Dr.

19 Khachatryan's opinion, and provides specific, legitimate reasons, supported by

20 substantial evidence in the record, for so doing, the ALJ need not pose a new

21 hypothetical to the vocational expert.

22       2.    <u>Plaintiff's medication</u>.

23       Plaintiff also asserts that the ALJ was required to incorporate into the

24 hypothetical plaintiff's significant medication side effects, namely, drowsiness and

25 sedation.  Plaintiff argues that the matter must be remanded in order to properly

26 incorporate the type, dosage, effectiveness, and side effects of plaintiff's medications

27 into a hypothetical question.  (JS 7.)  Plaintiff does not, however, cite any evidence in

28 the record supporting her allegation that she suffered drowsiness and sedation from her

1   medication.  (*See* JS 7, 9.)  Moreover, as defendant points out, the record reveals

2   numerous instances in which plaintiff had the opportunity to complain or show signs

3   of medication-induced drowsiness to physicians or other medical personnel, but did

4   not do so.  (AR 256-60, 280, 291, 295, 297, 308, 313-16, 318, 321-22, 451-511.)

5        The Court does note that Dr. Khachatryan reported that plaintiff was drowsy at

6   her psychiatric examination, and that plaintiff stated that her medications (at the time,

7   Paxil, Neurontin, Effexor, and Trazodone) caused the drowsiness.  (AR 233, 231-32.)

8   However, the ALJ did not err in failing to consider such evidence.  The Ninth Circuit

9   has held that an ALJ may properly reject a claimant's testimony regarding claimed side

10  effects by using "ordinary techniques of credibility evaluation" and providing a

11  specific, clear and convincing reason, supported by the record, that the claimant's

12  testimony was generally not credible.  *Thomas v. Barnhart*, 278 F.3d 947, 959-60 (9th

13  Cir. 2002) (upholding ALJ's finding that claimant generally lacked credibility as

14  permissible basis for not including claimant's testimony regarding side effects in

15  hypothetical to vocational expert) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th

16  Cir. 1991), and *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)); *but see*

17  *Varney v. Secretary of Health and Human Servs.*, 846 F.2d 581, 585-86 (9th Cir.)

18  (rejection of testimony regarding side effects requires specific finding that side effects

19  testimony was not credible), *reversed and remanded on other grounds*, 859 F.2d 1396

20  (9th Cir. 1988).

21       Here, the ALJ determined that plaintiff "was not a credible witness," and cited,

22  *inter alia*, her felony convictions and extensive criminal history, which included

23  assault with a deadly weapon.  The Court finds that this was a proper basis for an

24  adverse credibility determination.  *See Albidrez v. Astrue*, 504 F.Supp. 2d 814, 822

25  (C.D. Cal. 2007) (conviction of, *inter alia*, violent crime of attempted robbery in

26  violation of California Penal Code §§ 664 and 211 supported finding plaintiff not

27  credible).  That determination, in turn, supported the ALJ's rejection of plaintiff's

28  / / /

8

1   claims regarding her medication's side effects.  *See Thomas*, 278 F.3d at 960.

2   Accordingly, the Court affirms the ALJ's decision on this ground.

3   C.    Issue Three.

4         On May 14, 2001, Jerry Lee Delen, a friend of plaintiff's, completed a third-

5   party questionnaire on plaintiff's behalf.  In the questionnaire, Mr. Delen indicated that

6   plaintiff complained of "short sleep periods" and nightmares.  Mr. Delen also indicated

7   that plaintiff never left her house.  (AR 102.)  With respect to getting along with

8   others, Mr. Delen reported that plaintiff was "not real Social [*sic*]" and had a

9   "[t]empermental [d]isposition." (AR 104.)  Mr. Delen also noted that plaintiff's mind

10   drifted and that she did little in the way of chores or tasks around the house.  (AR 105.)

11   Finally, Mr. Delen stated that plaintiff shied away from people, had "little, if Any faith

12   or trust in Anyone [*sic*]," and had frequent and unexpected mood swings.  (*Id.*)

13         Plaintiff contends that the ALJ erred by ignoring Mr. Delen's description of the

14   effect her impairments had on her daily life.  Plaintiff argues that although the ALJ

15   could reject Mr. Delen's statements, he could not do so without providing reasons that

16   were germane to Mr. Delen.  (JS 10-11.)  The Court agrees.

17         20 C.F.R. § 416.913(d) provides that the ALJ "may . . . use evidence from other

18   sources to show the severity of [an individual's] impairment(s) and how it affects [his]

19   ability to work."  In turn, the Ninth Circuit has repeatedly held that "[d]escriptions by

20   friends and family members in a position to observe a claimant's symptoms and daily

21   activities have routinely been treated as competent evidence."  *Sprague v. Bowen*, 812

22   F.2d 1226, 1232 (9th Cir. 1987); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993)

23   (ALJ must consider lay testimony concerning a claimant's ability to work); *Stout v.*

24   *Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (same).  This

25   applies equally to sworn hearing testimony of witnesses (*see Nguyen v. Chater*, 100

26   F.3d 1462, 1467 (9th Cir. 1996)) as well as to unsworn statements and letters of friends

27   and relatives (*see Schneider v. Commissioner of the Soc. Sec. Admin.*, 223 F.3d 968,

28   974 (9th Cir. 2000)).  As a general rule, if the ALJ chooses to reject such evidence

1   from other sources, he may not do so without comment (*Nguyen*, 100 F.3d at 1467)

2   and he must provide "reasons that are germane to each witness" (*Dodrill*, 12 F.3d at

3   919).  However, if the reviewing court can "confidently conclude that no reasonable

4   ALJ, when fully crediting the testimony, could have reached a different disability

5   determination," the reviewing court may find the error harmless.  *Stout*, 454 F.3d at

6   1056.

7          Here, the Court cannot confidently conclude that Mr. Delen's statement, if

8   believed, would not have made a difference in the ALJ's disability determination, as

9   Mr. Delen provided probative information that was inconsistent with the ALJ's mental

10  residual functional capacity assessment.  Specifically, Mr. Delen observed that plaintiff

11  had an antisocial temperament and a labile mood.  This observation was in accord with

12  Dr. Khachatryan's opinion that plaintiff might have some limitations in dealing with

13  co-workers a result of her mood swings and irritability – limitations that the ALJ

14  ignored without comment.  Accordingly, remand is also required for proper evaluation

15  Mr. Delen' statement.[4]  If the ALJ again rejects his statement, he must provide reasons

16  for so doing that are germane to Mr. Delen.

17

18

19

20

21

22

23

24

25

26

27          [4]       The Court agrees with defendant, however, that the ALJ did not err by
    failing to consider Mr. Delen's observation that plaintiff never left her house (AR 102),
28  as the record indicated that plaintiff did, in fact, leave her house to attend doctors'
    appointments.  (*See* AR 297, 300, 301, 303.)

**CONCLUSION**

For the reasons set forth above, the matter requires remand for further proceedings.  The judgement of the Commissioner is accordingly reversed and the matter is remanded pursuant to sentence 4 of 42 U.S.C. § 405(g) for further proceedings.

IT IS SO ORDERED.


DATED: March 25, 2008


                                        / s / FREDERICK F. MUMM
                                        FREDERICK F. MUMM
                                        United States Magistrate Judge